27684. CUNNINGHAM *v.* MOORE.

DECIDED SEPTEMBER 12, 1939.   REHEARING DENIED OCTOBER 27, 1939.

*Harris, Harris, Russell & Weaver,* for plaintiff in error.
*Harry S. Strozier,* contra.

SUTTON, J.   C. B. Moore instituted suit by dispossessory warrant, in the municipal court of Macon, against S. O. Cunningham and George E. Saliba, and as a basis for the eviction of the defendants alleged: "Deponent says they failed to pay the rent due on July 1, 1938, which is still unpaid, and that they are holding the premises over beyond their term; that deponent, C. B. Moore, desires possession of the said house and lot, and has demanded from said S. O. Cunningham and George E. Saliba possession of the same since said rent became due, but the said S. O. Cunningham and George E. Saliba refused and neglected to give possession of the same." Upon the affidavit, which was executed on July 7, 1938, a dispossessory warrant was issued, but the proceeding was stopped by Cunningham by a counter-affidavit denying the allegations of Moore's affidavit, and setting up, among other things, that on July 5, 1938, and before Moore's affidavit was made, tender of rent due on July 1, 1938, was made to Moore. Cunningham furnished bond as required by law. On the trial of the case the court directed a verdict in favor of the defendants; and on certiorari to the superior court judgment was rendered that the plaintiff was entitled to the possession of the premises, and the defendants were ordered to surrender the same, and it was further ordered that the plaintiff recover from the defendants double rent as sued for. Cunningham excepted to this judgment.

The evidence was substantially as follows: On September 24, 1936, C. B. Moore leased certain premises to Holst C. Beall and S. O. Cunningham, for five years, at a rental of $50 per month, with the right to renew for an additional period of five years at a rental of $75 per month, the right to sublet or lease any part of the premises being expressed in the contract. Subsequently Beall, with the consent of the landlord, assigned his interest to George E. Saliba. Thereafter Saliba assigned to Cunningham his rights in and to the contract. Cunningham entered upon the premises and thereon operated a filling-station, and the relations between the parties continued without interruption until on or about February 1, 1938. On February 4, 1938, counsel for Moore, the landlord, demanded possession of the premises, because of non-payment of rent due February 1, 1938. On February 10, 1938, in a letter from C. B. Moore's counsel to counsel for Cunningham the demand for possession was withdrawn, but it was stated: "Won't you see that the rent is paid to Mr. Moore to-day, and please caution Mr. Cunningham to pay it on the day that it is due hereafter. Mr. Moore intends for this letter to be a demand that that be done." Under the terms of the lease agreement the rent was payable monthly in advance on the first day of each month. After the above-quoted letter the rent was paid when due until July 1, 1938. The rent due on that date was not paid at that time. On July 4, 1938, counsel for Moore addressed to Cunningham and Saliba a letter as follows: "As attorney at law for Mr. C. B. Moore, who is the owner of property at the corner of Broadway and Millard's Alley, known as 851 to 859 Broadway, in Macon, Georgia, which you hold under lease dated September 24, 1936, as amended on or about April 5, 1937, I hereby make demand on you to deliver the possession of said property to Mr. Moore immediately, on the ground that rent due on July 1, 1938, has not been paid." On the following day, July 5, 1938, Moore received a check for $50, being the payment for the July rental of the premises. On July 6, 1938, counsel for Moore returned the check in a letter reading as follows: "I represent Mr. C. B. Moore. Mr. Moore received from you to-day an envelope postmarked July 5, 1:30 p. m., enclosing check dated June 30 for $50, reciting that it is 'for rent Bush Service Station for account S. O. Cunningham.' On yesterday Mr. Moore, through me as his attorney, demanded possession

of the premises from Mr. Cunningham and Mr. Saliba, with whom he has a lease contract. Mr. Moore has elected to treat Mr. Cunningham and Mr. Saliba as tenants holding over. I therefore return herewith the check described." On the same day counsel for Cunningham advised counsel for Moore by letter that neither of the defendants regarded himself as a tenant holding over, that they contended that the lease was still in force and effect, and that they were occupying the premises by virtue of the aforesaid lease. It was further stated: "This morning you and the writer have agreed that we would consider that the money for the rental sent back to our clients has been retendered to you, and that such benefits as we might have by virtue of the tender of the money to you had accrued." Upon receipt of this letter counsel for Moore replied by letter, that, as to tender, the situation was the same as though tender of actual money had been made. It was subsequently agreed between counsel, that, instead of counsel for Cunningham continuing to make tender on the last day of each month, Moore was willing to waive actual tender, and agreed that Cunningham might have whatever benefit might accrue from subsequent tenders if actually made, but without prejudice to Moore's right to contend that such tenders were ineffectual to affect his rights in any way. The landlord accepted several payments of rent after the due date; and then, in accordance with the Code, § 20-116, gave notice that the strict terms of the lease agreement would be insisted upon. When the rent due July 1, 1938, was not paid on that date, the landlord, on July 4, 1938, made formal demand for possession of the premises. The tenants refused to surrender, and instead they sent check for July rent. This check was received by the landlord on July 5, 1938, and on July 6, 1938, was returned with advice that possession of the premises had been demanded on the previous day, and that election had been made to treat the defendants as tenants holding over. On July 7, 1938, the landlord sued out a dispossessory warrant in terms of the statute (Code, § 61-301), and Cunningham, by proper counter-affidavit in accordance with the Code, § 61-303, arrested the proceeding.

It is contended by the plaintiff in error that the rights of the parties are to be determined as of the date of the affidavit for dispossessory warrant; and that as tender was made for July rent before the making of the affidavit, and was equivalent to payment,

the provision of § 61-301, that to entitle a landlord to a dispossessory warrant against the defendants the rent must be unpaid, had not been met. It is further contended that there was evidence that the landlord had a prospect of renting the premises to another to better advantage, of which there was in fact testimony in the record, and that it was for this reason and not in good faith that the landlord instituted the present proceeding. The defendant in error contends that the only question involved is whether a landlord is entitled to sue out a dispossessory warrant, after making demand for possession, against a tenant who fails to pay the rent when due, and that the question of good faith in seeking possession of the premises is immaterial. The Code, § 61-301, provides: "In all cases where a tenant . . shall fail to pay the rent when the same shall become due . . and the owner of the lands or tenements shall desire possession of the same, such owner may, by himself, his agent, attorney in fact or attorney at law, demand the possession of the property so rented, leased, held, or occupied; and if the tenant shall refuse or omit to deliver possession when so demanded, the owner, his agent or attorney at law or attorney in fact may go before the judge of the superior court or any justice of the peace and make oath to the facts." When such affidavit is made, the warrant issues and is served. § 61-302. The tenant may arrest the proceeding by counter-affidavit and bond, in which event the issue is tried by a jury, §§ 61-303, 61-304. The affidavit in the present case followed the statute and recited, among other things, that the rent was unpaid. It was unpaid, not because the tenant was unwilling to pay it on the date the affidavit was executed and filed, but because the landlord had elected to demand possession and to refuse payment after the time specified in the lease agreement. To have accepted the belated tender would have created a waiver, as counsel for both sides apparently concede, and it would have been necessary for the landlord to make a new demand, after another failure to pay as agreed, before a proceeding under § 61-301 could be instituted under the facts of the present case.

Thus it conclusively appears that the landlord was entitled to the dispossessory warrant and possession, unless, as counsel for plaintiff in error contend, the tender was equivalent to payment. Tender is, of course, ordinarily equivalent to payment; but this principle can have no application where a condition of the contract is that pay-

ment must be made in advance on the first of each month, and where tender is not made in time. A party to a legal contract has the right to insist upon its terms; and in refusing to accept the past-due rent the landlord here was clearly within his rights, and the rent remained unpaid. In these circumstances the tenants were holding over, and the landlord had the right of immediate re-entry and dispossession. "The failure of a tenant to pay rent gives the landlord the right of immediate re-entry and dispossession. Where a tenant holds possession of lands or tenements beyond the term for which they were rented or leased to him, or fails to pay the rent when due, and the owner shall desire possession, he has a plain remedy by warrant to dispossess such a tenant." *Huff* v. *Markham,* 70 *Ga.* 284 (2). See *Clifford* v. *Gressinger,* 96 *Ga.* 789 (22 S. E. 399); *Hicks* v. *Beacham,* 131 *Ga.* 89 (62 S. E. 45); *Carter* v. *Sutton,* 147 *Ga.* 496 (94 S. E. 760); *Veal* v. *Jenkins,* 58 *Ga. App.* 4 (197 S. E. 328). In *Bowling* v. *Hathcock,* 27 *Ga. App.* 67 (107 S. E. 384), the facts on the question of eviction for non-payment of rent at the time specified in the lease agreement, although not fully stated in the report of the case, are shown by the record in this court to have been similar to those in the present case. The landlords, up to April 6, 1920, accepted from the tenant several payments of rent after the due date specified as the 6th day of each month, and then notified the tenant that thereafter payments must be made as per the agreement. The rent due on May 6, 1920, was not paid or tendered on that date. A check was mailed on May 8, 1920, but was refused and returned to the tenant, and demand for possession of the leased premises was thereupon made. The tenant refused to vacate, and on June 4, 1920, July 1, 1920, and August 1, 1920, sent checks for monthly rentals. The landlords refused to accept them, and returned them to the tenant. The affidavit for dispossessory warrant was executed on June 25, 1920, which was after three tenders of rent had been made. This court, upholding the verdict of the jury, held that the landlords were entitled to possession and to double rent. That decision controls the case now under consideration; and it follows that the judge of the superior court did not err in reversing the judgment of the municipal court of Macon, and in rendering judgment in favor of the landlord for possession of the premises and for double rent.

The cases cited by counsel for the plaintiff in error have been carefully considered, but they do not require any ruling different from the one here made. It is stated in the brief of counsel that in *Mahoney* v. *McKenzie*, 27 *Ga. App.* 245 (107 S. E. 775), the following principles of law are unequivocally announced: "(1) The acceptance of rent by the landlord after its date of maturity constitutes a waiver of the landlord's right to insist upon prompt payment. (2) The tender of the rent by the tenant, though made after demand for possession of the premises for its non-payment, is equivalent to payment, and if made before the filing of the affidavit defeats the landlord's right to proceed by dispossessory warrant for the recovery of the possession of the premises." The first principle, while sound, has no application to the facts of the present case, as it is not shown by the record that, after the landlord notified the tenants that strict compliance with the lease agreement would be insisted upon as to payments of rent, the landlord accepted any rents after the maturity dates, and consequently no waiver arose. The principle stated by counsel under (2) was not announced in the *Mahoney* case. With respect to tender of rent it was held (headnote 2) : "A landlord is not entitled to a dispossessory warrant for failure to pay rent on a day named, where strict adherence to the terms of the lease contract have been waived by the landlord and no demand has been made for the rent on the day named or at any other time, and the rent is tendered to the landlord before the commencement of the dispossessory warrant proceeding." The *Mahoney* decision could only reasonably be contended to control the present case if the dispossessory proceeding had been brought by the landlord Moore after he had accepted belated payments of rent, and before he had informed the tenants of his intention to insist upon payments as required by the lease agreement. At the time the proceeding was instituted here the situation in the *Mahoney* case did not exist. "Strict adherence to the terms of the lease contract" had *not*, since the notice given on February 10, 1938, been "waived." The *Mahoney* case is not authority for the proposition that, in the absence of waiver, tender of past-due rent before an eviction proceeding destroys the landlord's right to evict. In *Hicks* v. *Beacham*, 131 *Ga.* 89 (62 S. E. 45), when the case came on for trial a motion was made to dismiss the affidavit and warrant, because the affidavit did not allege that the rent was not

paid, and because it did not allege that the plaintiff had demanded payment of the rent and that the defendant refused to pay on demand. The court said that if the plaintiff was entitled to recover it must be either for the non-payment of rent or because the lands and tenements were being held over and beyond the term of the lease; and, in discussing procedure for the non-payment of rent, further said: "If a landlord bases his right to a summary recovery on non-payment of rent, as a statutory ground, *the rent must remain unpaid when the proceeding is begun.* An acceptance of rent after it is due will operate as a waiver of the right of summary dispossession for non-payment. The landlord can not accept the payment after the day when it is due and still proceed to dispossess his tenant under the statute, on the ground that it was not paid on such day. If the plaintiff sought to rest his case on this ground, the affidavit was insufficient in not alleging that the *rent had not been paid, or showing a failure or refusal to pay when the affidavit was made."* (Italics ours.) It was further said: "Thus the plaintiff was not entitled to dispossess the tenant on the ground of non-payment of rent, because it did not appear that the rent was unpaid when the proceeding was begun." The language quoted above is not to be taken as expressing a view that attempted payment in the form of a remittance or tender unaccepted will operate to deprive the landlord of the right to a dispossessory warrant.

Counsel for the plaintiff in error contend that the recital in the affidavit in the present case that the rent was unpaid was untrue, because, as they contend, the tender constituted payment, and that as the rent was unpaid when the affidavit was executed and filed the landlord is not, under the *Hicks* case, entitled to recover. As we have already ruled, the sending or tender of a check after the due date specified in the lease contract was not payment in accordance with the contract, and such tender was not in the present case accepted. Hence the *rent remained unpaid,* and the affidavit spoke the truth. When the court in the *Hicks* case (supra) said that the affidavit must allege that the rent is unpaid at the time the affidavit is made, it was referring to a situation, not only where there is inaction on the part of the tenant as to paying the rent, but also where there is a tender of the rent after the due date unaccepted by the landlord. That this is so is apparent from the lan-

guage which follows the statement that "if a landlord bases his right to a summary recovery," etc.: "An acceptance of rent after it is due will operate as a waiver of the right of summary dispossession for non-payment. The landlord *can not accept* the payment after the day when it is due, and still proceed to dispossess his tenant, under the statute, on the ground that it was not paid on such day." (Italics ours.) Even if it could be said that the affidavit was insufficient, there was no demurrer thereto; and the evidence showed conclusively that the plaintiff *did not accept* the rent tendered in July after the due date, but, having made a demand for possession of the leased premises, chose to stand upon his right to evict under the statute. The *Hicks* case is not in any way contrary to the ruling here made. In *Parker* v. *Gorlalowsky,* 129 *Ga.* 623 (59 S. E. 286), the landlord had denied the existence of any relation of landlord and tenant; and the Supreme Court, in 127 *Ga.* 560 (56 S. E. 846), had held that the relation did exist, and that the plaintiff had purchased his title from the original landlord with notice of the tenancy, and acquired title subject to the tenant's rights. Parker had sued the tenant in ejectment, not as a tenant but as a trespasser; and on the day Parker lost the ejectment suit in the superior court the tenant tendered a year's rent in cash. This tender was refused. The contract did not provide any definite time for payment of the rent, which was to be $300 per annum. Thus, before the decision of the Supreme Court, the plaintiff was refusing to accept tender of rent and was standing on his title and regarding the defendant as a trespasser. After the decision of the Supreme Court, but before the remittitur was filed in the trial court, the plaintiff instituted the dispossessory-warrant proceeding. The Supreme Court held that the proceeding was premature, for three reasons: (1) Until the judgment of the Supreme Court was made the judgment of the trial court on the receipt of the remittitur, the record was not closed in the trial court on the question of tenancy. (2) Before the judgment of the Supreme Court was made the judgment of the trial court the plaintiff demanded payment of rent, but demanded more than was due. (3) He also demanded payment of more interest than was due him. Thus the case in 129 *Ga.* 623 was decided on the ground that under the special facts the dispossessory proceeding was premature; and it is not authority for the contention advanced by counsel for the plaintiff in error.

Finally, it may be stated that where a landlord shows himself to be entitled under the statute to the summary remedy of a dispossessory warrant, his motive in desiring possession is immaterial; and the fact that in the present case it was made to appear that the landlord had a prospect of leasing the premises to better advantage can not alter or diminish his statutory rights. Under the undisputed facts no imposition, deceit, or fraud marks the conduct of the plaintiff in his dealings with the defendants; and, indeed, the pleadings raise only questions of law. See *Patterson v. Baugh*, 51 *Ga. App.* 767 (181 S. E. 686).

*Judgment affirmed. Stephens, P. J., and Felton, J., concur.*